1  THOMAS E. PEREZ, Assistant Attorney General
   STEVEN H. ROSENBAUM, Chief
2  TIMOTHY J. MORAN, Deputy Chief
3  MAX LAPERTOSA, Attorney
   BETH PEPPER, Attorney
4  Max.Lapertosa@usdoj.gov; Beth.Pepper@usdoj.gov
5  Housing and Civil Enforcement Section
   Civil Rights Division, U.S. Department of Justice
6  950 Pennsylvania Avenue NW – G Street
7  Washington, DC  20530
   Tel:  (202) 305-1077  |  Fax: (202) 514-1116
8
9  ANDRÉ BIROTTE, JR., United States Attorney
   LEON W. WEIDMAN, Chief, Civil Division
10 KEVIN B. FINN, Assistant United States Attorney
11 Kevin.Finn@usdoj.gov
   California Bar No. 128072
12 Federal Building, Suite 7516
   300 North Los Angeles Street
13 Los Angeles, CA  90012
14 Tel: (213) 894-6739  |  Fax: (213) 894-7327

15 Attorneys for Plaintiff, United States of America

16              UNITED STATES DISTRICT COURT
17             CENTRAL DISTRICT OF CALIFORNIA
                     WESTERN DIVISION
18

19 UNITED STATES OF AMERICA,          ) Case No. 2:10-cv-06774-GW (FMO)
                                      )
20        Plaintiff,                  ) **UNITED STATES'**
                                      ) **MEMORANDUM OF LAW IN**
21        v.                          ) **OPPOSITION TO DEFENDANT'S**
                                      ) **MOTION TO DISMISS**
22 CITY OF WALNUT, CALIFORNIA,        )
                                      )
23                                    ) The Hon. George H. Wu
          Defendant.                  ) Date:  January 13, 2011
24                                    ) Time:  8:30 AM
                                      ) Courtroom:  10
25
26
27
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

III.    ARGUMENT ......................................................................................................5

        A.     Standard.......................................................................................................5

        B.     RLUIPA'S Land-Use Provisions Do Not Require Exhaustion of
               Administrative Remedies ............................................................................7

        C.     Even If Exhaustion Were Required, the Zen Center's Alleged Failure to
               Exhaust Administrative Remedies Would Not Preclude the United States'
               Independent Action to Enforce RLUIPA....................................................11

        D.     This Case Is Ripe For Adjudication............................................................14

               1.     The City Reviewed a Meaningful Development
                      Application and Issued a Final and Authoritative
                      Determination .................................................................................14

               2.     The City Has Made Clear that Further
                      Administrative Proceedings Would Have Been
                      Futile ..............................................................................................19

        E.     The Zen Center Appealed to the City Council............................................21

IV.     CONCLUSION ................................................................................................24

1

# TABLE OF AUTHORITIES

2

## CASES

3

Ashcroft v. Iqbal,
        __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 868 (2009) ...................................5

4

5

Bikur Cholim, Inc. v. Vill. of Suffern,
        664 F. Supp. 2d 267 (S.D.N.Y. 2009)..................................................................17

6

7

Campbell v. Regents of the Univ. of Cal.,
        35 Cal. 4th 311, cert. denied,
        546 U.S. 938, 126 S. Ct. 428, 163 L. Ed. 2d 326 (2005) ....................................11

8

9

Church of the Holy Light of the Queen v. Mukasey,
        No. CV 08-3095-PA,
        2008 U.S. Dist. LEXIS 102990 (D. Or. Dec. 19, 2008) .......................................8

10

11

Church of the Lukumi Babalu Aye v. City of Hialeah,
        508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) ....................................9

12

13

Citizens for Open Gov't v. City of Lodi,
        144 Cal. App. 4th 865 (2006)...............................................................................10

14

15

City of Boerne v. Flores,
        521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997) ....................................7

16

17

Congregation Anshai Roosevelt v. Planning & Zoning Bd.,
        Civ. No. 07-4109,
        2008 U.S. Dist. LEXIS 63994 (D.N.J. Aug. 21, 2008),
        aff'd, 338 F. Appx. 214 (3d Cir. 2009)................................................................18

18

19

20

Cutter v. Wilkinson,
        544 U.S. 709, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005) ...............................7-8

21

22

EEOC v. Goodyear Aerospace Corp.,
        813 F.2d 1539 (9th Cir. 1987).........................................................................13-14

23

24

EEOC v. Pemco Aeroplex,
        383 F.3d 1280 (11th Cir. 2004), cert. denied,
        546 U.S. 811, 126 S. Ct. 42, 163 L. Ed. 2d 44 (2005) ....................................11-12

25

26

27

28    UNITED STATES' MEMORANDUM IN OPPOSITION                    PAGE II
      TO DEFENDANT'S MOTION TO DISMISS

EEOC v. Sidley Austin LLP,
    437 F.3d 695 (7th Cir.), cert. denied,
    549 U.S. 815, 127 S. Ct. 76, 166 L. Ed. 2d 27 (2006) .....................................13, 14

EEOC v. SWMW Mgmt.,
    No. CV-08-0946,
    2009 U.S. Dist. LEXIS 37996 (D. Ariz. Apr. 22, 2009)......................................13

EEOC v. Waffle House,
    534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) .................................12, 13

Freedom Baptist Church v. Town of Middleton,
    204 F. Supp. 2d 857 (E.D. Pa. 2002)........................................................................9

Grace Cmty. Church v. Lenox Township,
    544 F.3d 609 (6th Cir. 2008)................................................................ 14-15, 19

Guatay Christian Fellowship v. County of San Diego,
    No. 08-cv-1406,
    2008 U.S. Dist. LEXIS 93872 (S.D. Cal. Nov. 18, 2008) ....................................18

Guru Nanak Sikh Soc'y v. County of Sutter,
    456 F.3d 978 (9th Cir. 2006)...........................................................................9, 20

Hale O Kaula Church v. Maui Planning Comm'n,
    Civ. No. 01-00615,
    2003 U.S. Dist. LEXIS 24509 (D. Haw. Mar. 24, 2003)........................... 7, 16-17

Holy Land Found. v. Ashcroft,
    333 F.3d 156 (D.C. Cir. 2003), cert. denied,
    540 U.S. 1218, 124 S. Ct. 1506, 158 L. Ed. 2d 153 (2004) ...................................7

Humbert v. Castro Valley County Fire Prot. Dist.,
    214 Cal. App. 2d 1 (1963)................................................................................ 10-11

Knight v. Kenai Peninsula Borough Sch. Bd.,
    131 F.3d 807 (9th Cir. 1997), cert. denied sub nom.,
    Anchorage Educ. Ass'n v. Patterson,
    524 U.S. 904, 118 S. Ct. 2060, 141 L. Ed. 2d 138 (1998) .................................8, 11

Mendiondo v. Centinela Hosp. Med. Ctr.,
    521 F.3d 1097 (9th Cir. 2008)..................................................................................6

Midrash Sephardi, Inc. v. Town of Surfside,
    366 F.3d 1214 (11th Cir. 2004)...........................................................9

Murphy v. New Milford Zoning Comm'n,
    402 F.3d 342 (2d Cir. 2005)............................................ 10, 16, 18, 19

Outdoor Media Grp. v. City of Beaumont,
    506 F.3d 895 (9th Cir. 2007)...................................................... 15-16

Patsy v. Bd. of Regents,
    457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982) ...............8, 9, 10

S. Pacific Transp. Co. v. City of L.A.,
    922 F.2d 498 (9th Cir. 1990), cert. denied,
    502 U.S. 943, 112 S. Ct. 382, 116 L. Ed. 2d 333 (1991) ................16, 19

Sea & Sage Audobon Socy. v. Planning Comm'n,
    34 Cal. 3d 412 (1983)...................................................................11

Sec'y of Labor v. Fitzsimmons,
    805 F.2d 682 (7th Cir. 1986).........................................................12

Shelter Creek Dev. Corp. v. City of Oxnard,
    838 F.2d 375 (9th Cir.), cert. denied,
    488 U.S. 851, 109 S. Ct. 134, 102 L. Ed. 2d 106 (1988) .............8, 16, 19

Sts. Constantine & Helen Greek Orthodox Church
    v. City of New Berlin,
    396 F.3d 895 (7th Cir. 2005) .........................................................19

United States v. E. Baton Rouge Parish Sch. Dist.,
    594 F.2d 56 (5th Cir. 1979)...........................................................11

Williamson County Reg'l Planning Comm'n v. Hamilton Bank,
    473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985) .........10, 15, 17

Wyatt v. Terhune,
    315 F.3d 1108 (9th Cir.), cert. denied sub nom.,
    Alameida v. Wyatt,
    540 U.S. 810, 124 S. Ct. 50, 157 L. Ed. 2d 23 (2003).......................6, 7

# STATUTES

42 U.S.C.§ 1983..................................................................................................8

Prison Litigation Reform Act,
     42 U.S.C. § 1997e......................................................................................6

42 U.S.C. § 2000e-16..........................................................................................12

Religious Land Use and Institutionalized Persons Act (RLUIPA),
     42 U.S.C. §§ 2000cc – 2000cc-5 ................................................ passim

Cal. Gov't Code § 65903 ....................................................................................17

Walnut Code § 25-194.........................................................................................17

Walnut Code § 25-240........................................................................ 17, 20, 21, 22

# I.     INTRODUCTION

Claiming that its decision to deny a permit for a Buddhist house of worship is "conclusive and beyond challenge," Defendant City of Walnut ("City") has moved to dismiss the United States' lawsuit under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc – 2000cc-5.  Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss 3 ("Def.'s Mem."), ECF No. 6.  The City asserts that, after three public hearings before the City's Planning Commission and the development of a record consisting of thousands of pages of studies, testimony, building plans and other documents, the Chung Tai Zen Center of Walnut ("Zen Center") did not seek City Council review of the Planning Commission's denial – notwithstanding a timely letter from the Zen Center to the Council objecting to the denial – and that this failure, in turn, mandates dismissal of the United States' lawsuit.  This argument is based almost entirely on state law that has nothing to do with RLUIPA or the rules that apply to this case.

The City's Motion warrants denial on numerous grounds.  First, nowhere does RLUIPA require that plaintiffs in land-use cases exhaust administrative remedies prior to filing suit.  See 42 U.S.C. § 2000cc-2.  Second, even if RLUIPA did require exhaustion, the failure of a private party to exhaust administrative remedies would not preclude the United States from filing suit pursuant to its independent cause of action under RLUIPA.  Id. § 2000cc-2(f).  Third, this claim is ripe for adjudication, having

UNITED STATES' MEMORANDUM IN OPPOSITION                                      PAGE 1
TO DEFENDANT'S MOTION TO DISMISS

1  been the subject of a final resolution by the City's Planning Commission and an

2  extensively-developed record that included multiple public hearings and extensive

3  documentary evidence.  Finally, even if this case were subject to dismissal for failure to

4  exhaust – and it is not – the available evidence demonstrates that the Zen Center, in

5  compliance with the Walnut Code, appealed to the City Council, which took no action

6  in response.  See Def.'s Mem. Ex. E, Letter from Zen Center to Mayor and Members of

7
8  the City Council, Feb. 14, 2008, ECF No. 6-2.

9

10  **II.    BACKGROUND**

11         This case involves the Zen Center's multi-year efforts to construct what would

12
13  have been the only non-Christian house of worship in Walnut.  As the United States'

14  Complaint alleges, the Zen Center began designing its new house of worship in 2001

15
16  and met with neighborhood residents, City staff, and the Walnut Planning Commission

17  to address their concerns and incorporate their suggestions into the Zen Center's design.

18  Compl. ¶¶ 15-17, ECF No. 1.  As early as 2003, however, one of the Planning

19
20  Commissioners expressed concern that the Zen Center would seek to "recruit" and

21  influence students at a nearby middle school – a concern that was not, apparently, raised

22  for the numerous Christian churches in the vicinity.  See id. ¶ 17.

23
24         The Zen Center applied for a Conditional Use Permit on or about June 7, 2006.

25  Id. ¶ 19.  For nearly another year, the Zen Center negotiated with City staff, further

26  reducing the size of its proposed house of worship and adding amenities demanded by

27

28  UNITED STATES' MEMORANDUM IN OPPOSITION                                    PAGE 2
    TO DEFENDANT'S MOTION TO DISMISS

staff and neighbors, such as additional off-street parking. Id. ¶ 21. The Zen Center also agreed to be bound by a number of restrictions designed to mitigate traffic concerns, such as scheduling meditation classes when traffic was minimal and limiting the size of each class to 50 people. Id. ¶ 22. On June 6, 2007, City staff recommended that the Planning Commission approve the Zen Center's application. Id. ¶ 24.

The Planning Commission conducted three public hearings on the Zen Center's application and subjected it to a level of scrutiny that it had not applied to projects of similar or greater size in Walnut. See id. ¶¶ 24-29. For example, the Planning Commission demanded that the Zen Center conduct a second, "updated traffic study," which specified numerous areas of inquiry that the City's planning director conceded were not "normally addressed in your standard traffic impact analysis . . ." Id. ¶ 26. Indeed, the City relied on less rigorous traffic studies in approving a Catholic church that is three times larger than the Zen Center, as well as the Walnut Civic Center, a complex of three new public buildings one block from the Zen Center. See id. ¶¶ 37-42.

On January 16, 2008, after a lengthy public hearing, the Planning Commission voted to deny the Zen Center's Conditional Use Permit application. Id. ¶ 28. Even though the two traffic studies conducted at the Planning Commission's behest found that the Zen Center would not significantly impact traffic in the area, id. ¶ 27, the Commission nevertheless concluded the Zen Center would be a "tourist attraction" and would attract numerous visitors from outside Walnut. Id. ¶ 29. Commissioners also

UNITED STATES' MEMORANDUM IN OPPOSITION                    PAGE 3
TO DEFENDANT'S MOTION TO DISMISS

stated that the Zen Center would resemble much larger temples elsewhere in California and in Taiwan – a conclusion based not on the evidence in the record, but, rather, the fact that the Zen Center and these other, larger temples share the same religion or denomination.  See id. ¶ 29.

The Planning Commission issued a formal resolution denying the Zen Center's application on January 30, 2008.  Id. ¶ 30; see also Def.'s Mem. Ex. B, City of Walnut Planning Comm'n Resolution No. 2008-01, 1-2, ECF No. 6-1.  The City admits that this decision "became final."  Def.'s Mem. at 3.  After this decision, Walnut's City Manager informed a Zen Center representative that any appeal of the resolution to the City Council would be fruitless given the upcoming election in April 2008.  Compl. ¶ 31. Notwithstanding the City's discouragement, on February 14, 2008 – within the time frame allowed for an appeal, see Walnut Code § 25-240(b)[1] – the Zen Center sent to the City Council an eight-page letter, complete with demonstrative charts and graphs, objecting to the Planning Commission's resolution.  See id. ¶ 32; Def.'s Mem. at 4 & Ex. E.  The City did not respond to this letter.  Compl. ¶ 33.

After investigating this matter, the United States filed suit against the City for declaratory and injunctive relief pursuant to 42 U.S.C. § 2000cc-2(f).  The United States alleges that, in denying the Zen Center a Conditional Use Permit, the City 1) treated the

---

[1] See www.qcode.us/codes/walnut.

UNITED STATES' MEMORANDUM IN OPPOSITION                                      PAGE 4
TO DEFENDANT'S MOTION TO DISMISS

Zen Center on less than equal terms with other nonreligious assemblies or institutions,

in violation of 42 U.S.C. § 2000cc(b)(1); 2) discriminated against the Zen Center on the

basis of religion or religious denomination, in violation of 42 U.S.C. § 2000cc(b)(2);

and 3) substantially burdened the Zen Center's exercise of religion, in violation of 42

U.S.C. § 2000cc(a).  Compl. ¶¶ 45-47.  Although the Zen Center has, as a result of the

City's actions, been forced to relocate to another city, the United States' Complaint

seeks to enjoin the City from similarly applying discriminatory land-use policies or

practices to any persons or religious organizations that seek to construct or operate a

house of worship or otherwise exercise their religion in Walnut.  Id. at 10 ¶ 2.  Such

persons include members of the Zen Center, many of whom live in Walnut and who

have expressed interest in having a Buddhist house of worship in Walnut.  See id. ¶ 6.

## III.   ARGUMENT

### A.   Standard

The City frames its Motion as proceeding under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief may be granted.  Def.'s Mot. to Dismiss, ECF

No. 5.  Under Rule 12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 868 (2009) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

UNITED STATES' MEMORANDUM IN OPPOSITION                          PAGE 5
TO DEFENDANT'S MOTION TO DISMISS

cognizable legal theory or sufficient facts to support a cognizable legal theory."

Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

However, where a defendant claims that a plaintiff was required to exhaust non-judicial remedies and failed to do so, the court may, if necessary, decide disputed issues of fact related to whether the plaintiff did, or did not, fail to exhaust such remedies.  See Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir.), cert. denied sub nom., Alameida v. Wyatt, 540 U.S. 810, 124 S. Ct. 50, 157 L. Ed. 2d 23 (2003). "[D]efendants have the burden of raising and proving the absence of exhaustion."  Id. at 1119.[2]

This Court need not determine whether the Zen Center exhausted administrative remedies.  As explained below, the Zen Center is not, as a matter of law, required to exhaust administrative remedies under RLUIPA.  Even if this were required, the Zen Center's failure to exhaust administrative remedies would not bind the United States or preclude this action.  Thus, whether the Zen Center sought review by the City Council is

_____

[2] Wyatt involved a prisoner lawsuit under RLUIPA.  Unlike plaintiffs in land-use cases, prisoners must satisfy the Prison Litigation Reform Act (PRLA)'s requirement that they first exhaust administrative remedies before filing suit. 42 U.S.C. § 2000cc-2(e) (RLUIPA "shall not be construed to amend or repeal the Prison Litigation Reform Act of 1995"); 42 U.S.C. § 1997e(a) (PRLA) ("No action shall be brought with respect to prison conditions under . . . any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  In Wyatt, the Ninth Circuit held that a prisoner's failure to exhaust was not jurisdictional and that "the proper remedy is dismissal of the claim without prejudice."  315 F.3d at 1120.

UNITED STATES' MEMORANDUM IN OPPOSITION                    PAGE 6
TO DEFENDANT'S MOTION TO DISMISS

not relevant.  In any event, the evidence presented by the City demonstrates that the Zen

Center in fact appealed to the City Council.  Accordingly, the City cannot meet its

burden of demonstrating that the Zen Center failed to exhaust administrative remedies.

See Wyatt, 315 F.3d at 1120 (overturning dismissal of prisoner's claim because "[t]he

documents produced by defendants are inadequate to establish that Wyatt failed to

exhaust California's administrative review process.")

> **B.**    **RLUIPA's Land-Use Provisions Do Not Require Exhaustion of Administrative Remedies**

RLUIPA's land-use provisions contain no express requirement that administrative

remedies be exhausted before a plaintiff may file suit.  See 42 U.S.C. § 2000cc-2.

Accordingly, RLUIPA does not require plaintiffs in land use cases to exhaust

administrative remedies.  See Hale O Kaula Church v. Maui Planning Comm'n, Civ.

No. 01-00615, 2003 U.S. Dist. LEXIS 24509, *8 (D. Haw. Mar. 24, 2003) ("Plaintiffs

have obtained a 'final decision' of the County . . . and they are not required to exhaust

that remedy through state channels.") (emphasis added).  The Religious Freedom

Restoration Act (RFRA), which is the precursor statute to RLUIPA and contains

substantially similar provisions,[3] similarly has been held not to require exhaustion.

---

[3]  In 1997, the Supreme Court held that RFRA is unconstitutional as applied to States.  City of Boerne v. Flores, 521 U.S. 507, 532, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997).  Congress subsequently enacted RLUIPA, which is more limited in scope than RFRA.  See Cutter v. Wilkinson, 544 U.S. 709, 715, 125 S. Ct. 2113, 161 L. Ed. 2d

(Continued...)

1  <u>Church of the Holy Light of the Queen v. Mukasey</u>, No. CV 08-3095-PA, 2008 U.S.

2  Dist. LEXIS 102990, *9 (D. Or. Dec. 19, 2008).

3      In <u>Patsy v. Board of Regents</u>, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172

4

5  (1982), the Supreme Court held that 42 U.S.C. § 1983, under which private plaintiffs

6  may bring Constitutional challenges to local land-use decisions,[4] does not require

7

8  exhaustion of administrative remedies.  457 U.S. at 516.  In making this determination,

9  the Court recognized that Congressional intent "is of paramount importance in the

10 exhaustion context because Congress is vested with the power to prescribe the basic

11

12 procedural scheme under which claims may be heard in federal court."  <u>Id.</u> at 501.

13 Accordingly, the Court examined the statute's legislative history and structure, relying

14

15 heavily on the fact that Congress had "created a specific, limited exhaustion requirement

16 for adult prisoners bringing actions under § 1983."  <u>Id.</u> at 508.  This provision

17 "demonstrate[d] that Congress understood that exhaustion is not generally required in §

18

19 1983 actions."  <u>Id.</u>; <u>see also</u> <u>Knight v. Kenai Peninsula Borough Sch. Bd.</u>, 131 F.3d 807,

20 816 (9th Cir. 1997) ("The statute requires exhaustion only when brought by prisoners.

21

22   (...Continued)

23 1020 (2005).  RFRA remains valid as applied to the federal government and federal

24 territories.  <u>See</u> <u>Holy Land Found. v. Ashcroft</u>, 333 F.3d 156, 167 (D.C. Cir. 2003), <u>cert. denied</u>, 540 U.S. 1218, 124 S. Ct. 1506, 158 L. Ed. 2d 153 (2004).

25   [4] <u>See</u>, <u>e.g.</u>, <u>Shelter Creek Dev. Corp. v. City of Oxnard</u>, 838 F.2d 375 (9th Cir.),

26 <u>cert. denied</u>, 488 U.S. 851, 109 S. Ct. 134, 102 L. Ed. 2d 106 (1988).

27

28 UNITED STATES' MEMORANDUM IN OPPOSITION                          PAGE 8
   TO DEFENDANT'S MOTION TO DISMISS

1    Thus, mandating exhaustion in this case would not be consistent with congressional

2    intent."), cert. denied sub nom., Anchorage Educ. Ass'n v. Patterson, 524 U.S. 904, 118

3
4    S. Ct. 2060, 141 L. Ed. 2d 138 (1998).

5        The reasoning of Patsy applies with equal force to RLUIPA.  As with Section

6    1983, RLUIPA expressly requires prisoners to exhaust administrative remedies.  42

7
8    U.S.C. § 2000cc-2(e); see supra note 2.  The carve-out of an exhaustion requirement for

9    prisoners only demonstrates that Congress did not intend to impose a general exhaustion

10   requirement in RLUIPA actions.  See Patsy, 457 U.S. at 508.  This conclusion is

11
12   buttressed by RLUIPA's substantial overlap with Section 1983 and the First

13   Amendment.  RLUIPA codifies rights under the Establishment and Free Exercise

14   Clauses.  See Guru Nanak Sikh Soc'y v. County of Sutter, 456 F.3d 978, 985 (9th Cir.

15
16   2006) ("RLUIPA is Congress's latest effort to protect the free exercise of religion

17   guaranteed by the First Amendment from governmental regulation."); Freedom Baptist

18   Church v. Town of Middleton, 204 F. Supp. 2d 857, 870 (E.D. Pa. 2002); Midrash

19
20   Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1230 (11th Cir. 2004).  These rights

21   are also privately enforceable via Section 1983.  See Church of the Lukumi Babalu Aye

22   v. City of Hialeah, 508 U.S. 520, 528, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993).  Thus,

23
24   there is no basis to conclude that Congress, having rejected a general exhaustion

25   requirement under Section 1983, nevertheless intended to impose such a requirement

26   under RLUIPA without expressly saying so.

27

28   UNITED STATES' MEMORANDUM IN OPPOSITION                                    PAGE 9
     TO DEFENDANT'S MOTION TO DISMISS

1    The City does not point to any statutory language, legislative history or other

2  authority indicating that Congress intended to include a general exhaustion requirement

3  within RLUIPA.  See Def.'s Mem. at 3-4.  Instead, the City cites to various state court

4

5  decisions that do not involve RLUIPA or, for that matter, any federal statute, and simply

6  assumes without explanation that state law governs this case.  Id.  Yet the fact that

7
   certain California statutes require exhaustion of administrative remedies says nothing
8

9  about whether Congress so intended under RLUIPA – and it is Congress' intent, not

10  State law, that is determinative of this question.  See Patsy, 457 U.S. at 501 ("Congress

11
    is vested with the power to prescribe the basic procedural scheme under which claims
12

13  may be heard in federal court.").  Indeed, all but one of the cases the City cites in

14  support of its argument that exhaustion is required, see Def.'s Mem. at 3-4, involves a

15
    statute or provision with an express exhaustion requirement.[5]  See Citizens for Open
16

17  Gov't v. City of Lodi, 144 Cal. App. 4th 865, 875 (2006) (exhaustion required under

18  California Environmental Quality Act (CEQA) because it "codifies the doctrine of

19
    administrative remedies"); Humbert v. Castro Valley County Fire Prot. Dist., 214 Cal.
20

21  _____

22    [5] The lone RLUIPA case cited by the City, Murphy v. New Milford Zoning
    Comm'n, 402 F.3d 342 (2d Cir. 2005), see Def.'s Mem. at 3, does not involve
23  exhaustion.  Rather, it examined whether the plaintiff's claims were "ripe."  Id. at 347.
24  As explained in Section III.C, infra, ripeness and exhaustion are "conceptually distinct."
    Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 192, 105
25  S. Ct. 3108, 87 L. Ed. 2d 126 (1985).  Furthermore, as shown below, this case easily
26  meets the requirements for "ripeness."

27

28  UNITED STATES' MEMORANDUM IN OPPOSITION                                    PAGE 10
    TO DEFENDANT'S MOTION TO DISMISS

App. 2d 1, 5 (1963) (in state law breach of contract action, contract expressly required internal appeal); Sea & Sage Audobon Socy. v. Planning Comm'n, 34 Cal. 3d 412, 414-15 (1983) (CEQA); Campbell v. Regents of the Univ. of Cal., 35 Cal. 4th 311, 322, cert. denied, 546 U.S. 938, 126 S. Ct. 428, 163 L. Ed. 2d 326 (2005) (exhaustion required "where an administrative remedy is provided by statute") (internal citations omitted). Because RLUIPA's land-use provisions contain no such express requirement, this absence demonstrates that RLUIPA does not require plaintiffs (other than prisoners) to exhaust administrative remedies.  See Knight, 131 F.3d at 816.

**C.    Even if Exhaustion Were Required, the Zen Center's Alleged Failure to Exhaust Administrative Remedies Would Not Preclude the United States' Independent Action to Enforce RLUIPA**

Even if RLUIPA required the Zen Center to exhaust administrative remedies before it could file suit – and it does not – this would not warrant dismissal of the instant action.  This case was not filed by the Zen Center.  Rather, it was filed by the United States pursuant to an express cause of action under RLUIPA, which is independent from that of private parties.  Compare 42 U.S.C. §§ 2000cc-2(f) with 2000cc-2(a). Accordingly, in seeking to vindicate the City's violation of federal law, the United States is not bound by whether the Zen Center failed to exhaust administrative remedies.

It is a well-settled "general principle of law that the United States will not be barred from independent litigation by the failure of a private plaintiff."  United States v. E. Baton Rouge Parish Sch. Dist., 594 F.2d 56, 58 (5th Cir. 1979).  "This principle is

UNITED STATES' MEMORANDUM IN OPPOSITION                                PAGE 11
TO DEFENDANT'S MOTION TO DISMISS

based primarily upon the recognition that the United States has an interest in enforcing federal law that is independent of any claims of private citizens." Id.; see also EEOC v. Pemco Aeroplex, 383 F.3d 1280, 1291 (11th Cir. 2004) ("Quite simply, it is so unusual to find privity between a governmental agency and private plaintiffs because governmental agencies have statutory duties, responsibilities, and interests that are far broader than the discrete interests of a private party."), cert. denied, 546 U.S. 811, 126 S. Ct. 42, 163 L. Ed. 2d 44 (2005).  Thus, for example, "[t]he Government is not barred by the doctrine of res judicata from maintaining independent actions asking courts to enforce federal statutes implicating both public and private interests merely because independent private litigation has also been commenced or concluded." Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 692 (7th Cir. 1986).

In EEOC v. Waffle House, 534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002), an employee who claimed that he was discriminated against failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), a procedure that, under Title VII of the 1964 Civil Rights Act, private parties must exhaust before filing employment discrimination claims in federal court. See 42 U.S.C. § 2000e-16(c).  Additionally, the employee had signed an arbitration agreement that precluded him from filing a lawsuit against his employer.  534 U.S. at 282-83.  The EEOC nevertheless filed suit pursuant to its independent cause of action under Title VII and sought, among other things, damages and other specific relief for the employee.  Id.

1   at 283.  The employer moved to compel arbitration or, alternatively, to dismiss the case,

2   based on the arbitration agreement.  Id. at 284.  The Supreme Court held that the EEOC

3   was not a party to, and not bound by, the arbitration agreement or, for that matter, the

4   employee's failure timely to seek administrative relief, holding that "the statutory text

5   [of Title VII] unambiguously authorizes [the EEOC] to proceed in a judicial forum."  Id.

6   at 292.

7       Applying Waffle House, courts have held that an employee's failure to exhaust

8   Title VII's administrative remedies does not preclude the Government from filing its

9   own lawsuit.  EEOC v. Sidley Austin LLP, 437 F.3d 695, 696 (7th Cir.) ("[T]he

10  Commission is not bound by the failure of the [employees] to exhaust their remedies;

11  the Commission had no duty to exhaust.") (emphasis in original), cert. denied, 549 U.S.

12  815, 127 S. Ct. 76, 166 L. Ed. 2d 27 (2006); EEOC v. SWMW Mgmt., No. CV-08-

13  0946, 2009 U.S. Dist. LEXIS 37996, *6 (D. Ariz. Apr. 22, 2009) ("[I]t is immaterial to

14  this enforcement action that neither Ms. Nagel or Ms. Blakley timely filed charges with

15  the EEOC sufficient to permit private suits against Defendants. . . . [T]he EEOC is the

16  only plaintiff in this action and it is not bound by the same filing prerequisites that are

17  strictly imposed upon private parties.").  Indeed, even before Waffle House, the Ninth

18  Circuit recognized that the Government's cause of action under Title VII "is

19  independent of the employee's private action rights" and that "[b]y seeking injunctive

20  relief, 'the EEOC promotes public policy and seeks to vindicate rights belonging to the

UNITED STATES' MEMORANDUM IN OPPOSITION                                   PAGE 13
TO DEFENDANT'S MOTION TO DISMISS

1  United States as sovereign.'" <u>EEOC v. Goodyear Aerospace Corp.</u>, 813 F.2d 1539,

2  1542-43 (9th Cir. 1987) (quoting <u>EEOC v. Occidental Life Ins. Co.</u>, 535 F.2d 533, 537

3  (9th Cir. 1976)) (emphasis in original).

4

5  This analysis also applies here. In filing the instant RLUIPA lawsuit, the United

6  States does not simply step into the shoes of the Zen Center. Rather, the United States

7  has an independent cause of action and may seek injunctive and declaratory relief "to

8

9  vindicate rights belonging to the United States as sovereign." <u>Id.</u> The United States'

10 interests include not just ensuring that the rights of the Zen Center and its members are

11

12 protected, but also that the City does not violate the rights of any other religious

13 organization or entity through its discriminatory application of zoning and land-use

14 laws, policies and procedures. Furthermore, the United States has no duty to exhaust

15

16 administrative remedies. <u>See</u> <u>Sidley Austin LLP</u>, 437 F.3d at 696. Thus, regardless

17 whether the Zen Center may file suit, this does not affect the United States' ability to

18 bring its own action.

19

20 **D.    This Case Is Ripe For Adjudication**

21    **1.    The City Reviewed a Meaningful Development Application and**
22           **Issued a Final and Authoritative Determination**

23 Although exhaustion of administrative remedies is not required, a RLUIPA claim

24 must nevertheless be "ripe," <u>i.e.</u>, bear "sufficient indicia of finality" to render it

25

26 reviewable by a federal court. <u>See</u> <u>Grace Cmty. Church v. Lenox Township</u>, 544 F.3d

27

28 UNITED STATES' MEMORANDUM IN OPPOSITION                                    PAGE 14
   TO DEFENDANT'S MOTION TO DISMISS

609, 614 (6th Cir. 2008). "The question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable." <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172, 192, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). While recognizing some overlap between the doctrines, the Supreme Court characterized the distinction as follows:

> [T]he finality requirement is concerned with whether <u>the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury</u>; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

<u>Id.</u> at 193 (emphasis added). One example the Court cited of a procedure that a plaintiff would need to pursue under an exhaustion requirement, but would not need to pursue for a claim to be ripe, was an appeal from the Planning Commission to the local Board of Zoning Appeals. This is because the Board could only review the Planning Commission's rejection and could not "participate in the Commission's decisionmaking." <u>Id.</u>

Applying this distinction, the Ninth Circuit in <u>Outdoor Media Grp. v. City of Beaumont</u>, 506 F.3d 895 (9th Cir. 2007), held that a plaintiff's Constitutional claim, brought under Section 1983, was ripe notwithstanding the plaintiff's failure to pursue state administrative remedies. This was because "the alleged deprivation of Outdoor

UNITED STATES' MEMORANDUM IN OPPOSITION                    PAGE 15
TO DEFENDANT'S MOTION TO DISMISS

1    Media's constitutional rights was completed when [the city] denied its permit

2    applications." Id. at 900.  Thus, because Section 1983 does not require exhaustion, the

3
     court held that the failure to do so "did not deprive the district court of jurisdiction over
4

5    this case." Id.

6        In the context of a Constitutional/Section 1983 challenge to a land-use decision,

7
     the Ninth Circuit has held that a claim is ripe when a party has obtained "a final and
8

9    authoritative determination of the type and intensity of development legally permitted

10   on the subject property." Shelter Creek Dev. Corp. v. City of Oxnard, 838 F.2d 375,

11
     378 (9th Cir.), (9th Cir.), cert. denied, 488 U.S. 851, 109 S. Ct. 134, 102 L. Ed. 2d 106
12

13   (1988) (quoting Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1453 (9th Cir. 1987)).  The

14   Ninth Circuit later clarified that "[i]n applying the 'final determination' requirement,

15
     courts have emphasized that local decision-makers must be given an opportunity to
16

17   review at least one reasonable development proposal before an as-applied challenge to a

18   land-use regulation will be considered ripe." S. Pacific Transp. Co. v. City of L.A., 922

19
     F.2d 498, 503 (9th Cir. 1990), cert. denied, 502 U.S. 943, 112 S. Ct. 382, 116 L. Ed. 2d
20

21   333 (1991); see also Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d

22   Cir. 2005) (property owner must submit "at least one meaningful application for a

23
     variance.") (citing Williamson County, 473 U.S. at 190).
24

25        Applying this jurisprudence, the court in Hale O Kaula Church v. Maui Planning

26   Comm'n, Civ. No. 01-00615, 2003 U.S. Dist. LEXIS 24509 (D. Haw. Mar. 24, 2003),

27
     UNITED STATES' MEMORANDUM IN OPPOSITION                                    PAGE 16
28   TO DEFENDANT'S MOTION TO DISMISS

1  held that a RLUIPA claim was ripe for adjudication because local authorities had denied

2  a Special Use Permit to operate a church in an existing building.  Accordingly, "the

3
   Plaintiffs have obtained a 'final decision' of the County on that matter and they are not
4

5  required to exhaust that remedy through state channels."  Id. at *8.

6         This case likewise meets the requirements for ripeness and finality.  There is no

7
   dispute that the Planning Commission was the "initial decisionmaker," see Williamson
8

9  County, 473 U.S. at 193, on whether the Zen Center could obtain a Conditional Use

10 Permit.  See Walnut Code § 25-194 (setting forth procedures under which the

11
   Commission reviews and decides Conditional Use Permit applications).  The
12

13 Commission issued a detailed resolution rejecting the Zen Center's application.  Def.'s

14 Mem. Ex. B.  The City describes this decision as "final."  Id. at 3.  Accordingly, the

15
   Commission reached a "definitive position" that inflicted an "actual, concrete injury" on
16

17 the Zen Center, see Williamson County, 473 U.S. at 193, in that it was prohibited from

18 constructing its house of worship and concomitantly had to leave Walnut.  The

19
   resolution and its extensive underlying record provide the necessary factual basis for
20

21 evaluating whether the City's actions comply with RLUIPA, and the City Council's

22 review is precisely the type of procedure that the Supreme Court has held is not

23
   necessary to exhaust under the "ripeness" or "finality" doctrine.  Id.; see also Bikur
24

25 Cholim, Inc. v. Vill. of Suffern, 664 F. Supp. 2d 267, 275 (S.D.N.Y. 2009) (where

26

27
   UNITED STATES' MEMORANDUM IN OPPOSITION                                    PAGE 17
28 TO DEFENDANT'S MOTION TO DISMISS

plaintiff sought and was denied a zoning variance, "defendant's claim that this case is

not yet ripe [because] Bikur Cholim did not appeal" dismissed as "irrelevant.") [6]

RLUIPA cases dismissed as unripe have typically involved parties who fail to

apply for a permit or variance at all, thus depriving the court of an administrative record.

See, e.g., Murphy, 403 F.3d at 345 (plaintiffs failed to seek variance); Guatay Christian

Fellowship v. County of San Diego, No. 08-cv-1406, 2008 U.S. Dist. LEXIS 93872,

*12 (S.D. Cal. Nov. 18, 2008) (because it did not apply for permit, plaintiff "fails to

establish case or controversy"); Congregation Anshai Roosevelt v. Planning & Zoning

Bd., Civ. No. 07-4109, 2008 U.S. Dist. LEXIS 63994, *39 (D.N.J. Aug. 21, 2008)

("Allowing the Board to consider and rule on Plaintiffs' variance application will help

develop a full record – something that is absent at this time, and as such, militates

against review of Plaintiffs' federal claims."), aff'd, 338 F. Appx. 214 (3d Cir. 2009).

That is indisputably not the case here.  As the City's own Statement of Facts

acknowledges, the Zen Center "applied for a conditional use permit to construct its'

[sic] religious facility . . ." Def.'s Mem. at 2.  It engaged in "lengthy negotiations with

staff" and "satisfied many of the requested conditions and obtained a neutral position of

---

[6] Neither the Walnut Code nor state law cited by the City authorizes the City
Council to "participate in the Commission's decisionmaking," id. at 193.  See Walnut
Code § 25-240(e); Cal. Gov't Code § 65903.  Indeed, the City states that "Planning
Commissions . . . administer land use decisions." Def.'s Mem. at 3.

the staff." Id.  There was a "public hearing on January 16, 2008 [that] attracted an

overflow crowd . . ." Id.  There is also no dispute that the Planning Commission held

two other public hearings, one on June 6, 2007 and another on September 5, 2007.  Id.

Ex. B (referring to hearings).  The Planning Commission, in its January 30, 2008

resolution, stated that it had "sufficiently considered all testimony and any documentary

evidence presented to them" in making its determination.  Id. at 2.  There can be no

dispute that the City was "given an opportunity to review at least one reasonable

development proposal" from the Zen Center, thus rendering this case ripe for

adjudication.  See S. Pacific Transp. Co., 922 F.2d at 503.[7]

2.    **The City Has Made Clear that Further Administrative Proceedings Would Have Been Futile**

Even if the Commission's decision were somehow not "definitive," the City made

clear to the Zen Center that a City Council appeal would in all likelihood be futile and

"a waste of time and money."  See Grace Cmty. Church, 544 F.3d at 617 (quoting

_____

[7] In Saints Constantine & Helen Greek Orthodox Church v. City of New Berlin, 396 F.3d 895(7th Cir. 2005), a church had repeatedly satisfied a city's conditions for a zoning variance.  The city nevertheless continued to refuse to grant the variance, but suggested a number of other procedural avenues for the church to pursue. Id. at 898-99.  Not only was the church not required to pursue these remedies before bringing its RLUIPA claims, but the court found that the city's unjustified denials and "delaying game" constituted a "substantial burden" on the church's exercise of religion, and further held that "the inference arises that hostility to religion, or more likely to a particular sect, influenced the decision." Id. at 900-01.

1 | Bigelow v. Mich. Dep't of Nat'l Res., 970 F.2d 154, 158 (6th Cir. 1992)). As the Ninth

2 | Circuit in Shelter Creek Dev. Corp. held, a "final determination" need not be sought if

3 | doing so would be an "idle and futile act," provided that the landowner has submitted at

4 | least one "meaningful application" for development and a variance. 838 F.2d at 378

5 | (citations omitted). Other circuits are in accord. Murphy, 402 F.3d at 348 ("[T]he

6 | finality requirement is not mechanically applied. A property owner, for example, will

7 | be excused from obtaining a final decision if pursuing an appeal to a zoning board of

8 | appeals or seeking a variance would be futile. That is, a property owner need not pursue

9 | such applications when a zoning agency . . . has dug in its heels and made clear that all

10 | such applications will be denied."). Cf. Guru Nanak Sikh Soc'y, 456 F.3d at 991

11 | ("Even if Guru Nanak were once again to follow the Planning Division's detailed

12 | requirements on mitigating impacts on nearby land, history shows such extensive efforts

13 | could very well be in vain.").

14 |     Here, the City Manager told the Zen Center that appealing to the City Council

15 | would be fruitless because of the upcoming April 2008 election. Compl. ¶ 31. The City

16 | does not deny this assertion; it states the City Manager "does not remember making

17 | such a statement," but concedes that "if he did, the frame of reference that was under

18 | would have been that the Council did not want the appeal so close to the election."

19 | Def.'s Mem. Ex. C, Letter from M. Montgomery to M. Lapertosa, Apr. 21, 2009, ECF

No. 6-2.[8]  This statement indicates that the City Council was heavily influenced by what

the City describes as the "majority of Walnut residents opposed" to the Zen Center,

Def.'s Br. at 2, and that, had the Council reviewed the Zen Center's application, it

would have simply affirmed the Planning Commission's denial.

### E.     The Zen Center Appealed to the City Council

Finally, even if the Court were to find that RLUIPA required the Zen Center to

exhaust administrative remedies, and that the failure to do so would bind the United

States, the City's Motion should still be denied because the evidence demonstrates that,

notwithstanding the City's repeated contentions to the contrary, the Zen Center appealed

to the City Council per the requirements of the Walnut Code.  That the City Council

elected to disregard or ignore this appeal does not mean the Zen Center failed to exhaust

this remedy.

The Walnut Code allows Conditional Use Permit applicants to appeal Planning

Commission decisions to the City Council within 15 days of notice of the Commission's

decision.  Walnut Code § 25-240(b).  The Code mandates no specific form for an

appeal, except that it "shall be in writing, stating the grounds therefor and setting forth

the alleged error."  Id. § 25-240(c).

---

[8] Of course, had the Zen Center waited until after the April 2008 election to
appeal, it would have been untimely.  Walnut Code § 25-240(b) (appeals must be made
within 15 days of Planning Commission's decision).

UNITED STATES' MEMORANDUM IN OPPOSITION                                    PAGE 21
TO DEFENDANT'S MOTION TO DISMISS

On February 14, 2008 – within the time frame specified by the Walnut Code – the Zen Center, which was not represented by counsel at the time, sent the City Council an eight-page letter disputing the Planning Commission's January 30, 2008 resolution. Although it did not contain the word "appeal," the letter addressed each finding of the Planning Commission and explained why the Zen Center believed the findings were erroneous. Def.'s Mem. Ex. E. There is no allegation that City Council scheduled a hearing or took any action whatsoever based on this letter.

The City now claims that this letter "did not appeal the Planning Commission's action." Def.'s Mem. at 5. Yet it provides no explanation whatsoever for this assertion or belief, which is devoid of any factual basis. The letter indisputably meets the Walnut Code's minimal requirements for an appeal: it is "in writing" and exhaustively sets forth "the grounds" for the appeal and "the alleged error." Walnut Code § 25-240(c). This demonstrates that, under the City's reasoning, the Zen Center exhausted its administrative remedies. Indeed, the City Council's utter failure to respond to or otherwise address the concerns raised by its own constituents in this letter attests to the futility of any appeal to the Council.

The City's position is further undermined by the letter of the City Attorney (which he submitted "as if it were sworn") that explains the City Manager's apparent attempt to discourage the Zen Center from appealing to the Council. Def.'s Mem. Ex. C. The City Attorney wrote that, in deference to the concern that the Zen Center's

1    appeal not coincide with the municipal election, he "arranged the calendaring so that the

2    decision would not come down prior to the then-pending election." Id. Of course, if the

3    Zen Center did not appeal to the Council, then there would have been nothing to

4

5    "calendar" and no pending "decision" to postpone.  The City does not and cannot

6    reconcile the City Attorney's statement with its assertion that the Zen Center's letter is

7    not an "appeal."

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    UNITED STATES' MEMORANDUM IN OPPOSITION                    PAGE 23
      TO DEFENDANT'S MOTION TO DISMISS

## IV.    **CONCLUSION**

For the reasons stated above, the United States respectfully requests that this Court deny the City's Motion to Dismiss.


Dated:  December 23, 2010                    Respectfully submitted,


ANDRÉ BIROTTE, JR.                           THOMAS E. PEREZ
United States Attorney                       Assistant Attorney General
                                             Civil Rights Division


                                             /s/ Max Lapertosa
LEON W. WEIDMAN                              STEVEN H. ROSENBAUM
Chief, Civil Division                        Chief
KEVIN B. FINN                                TIMOTHY J. MORAN
Assistant United States Attorney             Deputy Chief
Federal Building, Suite 7516                 MAX LAPERTOSA
300 North Los Angeles Street                 BETH PEPPER
Los Angeles, CA  90012                       Trial Attorneys
Tel: (213) 894-6739                          Housing and Civil Enforcement Section
Fax: (213) 894-7327                          Civil Rights Division
                                             U.S. Department of Justice
                                             950 Pennsylvania Avenue, NW – G St.
                                             Washington, DC  20530
                                             Tel:  (202) 305-1077
                                             Fax:  (202) 514-1116

1

## CERTIFICATE OF SERVICE

2

   I am over the age of eighteen and not a party to the within action.  I am employed
3 by the United States Department of Justice, Civil Rights Division, Housing and Civil
Enforcement Section.  My business address is 950 Pennsylvania Avenue NW – G
4 Street, Washington, DC 20530.

5

   On December 23, 2010, I served the foregoing document entitled **United States'**
6 **Memorandum in Opposition to Defendant's Motion to Dismiss** via the Court's
7 CM/ECF system, which shall send notice to the following counsel of record at the
electronic mail address listed below:
8

9 Michael B. Montgomery, Esq.
City Attorney, City of Walnut
10 2627 Mission Street, Suite 1
11 San Marino, CA  91108-1639
mbmontgomery@usdoj.gov
12

13    I declare under penalty of perjury under the laws of the United States that the
foregoing is true and correct.
14

15    Executed this 23rd day of December, 2010, at Washington, D.C.

16
                              /s/ Max Lapertosa
17

18

19

20

21

22

23

24

25

26

27

28